IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARTA BETANCOURT ESQUERDO, et
al.,

Plaintiffs

v.                                                    CIVIL 03-1189 (PG)

UNIÓN INTERNACIONAL UNITED
AUTO WORKERS,

Defendant

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion for summary judgment filed by defendant Unión Internacional United Auto Workers (hereinafter "UAW") on April 14, 2005.  (Docket No. 63.)  A corrected brief in support of the motion for summary judgment was later filed on June 6, 2005.  (Docket No. 78.) The plaintiffs, Marta Gisela Betancourt Esquerdo (hereinafter "Betancourt") and Ernesto Ramírez (collectively "plaintiffs"), filed an opposition on July 6, 2005.  (Docket No. 85.)

Plaintiffs' amended complaint, filed April 25, 2003, alleges eight causes of action.[1]  I issued a report and recommendation to deny defendant's motion for

---

[1]The first through fourth causes of action seek damages for alleged violations of Title VII, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII").  The fifth cause of action alleges violations of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. 1661 et seq. (hereinafter COBRA).  The sixth cause of action is a supplemental claim based on the statutes and Constitution of Puerto Rico.  The seventh cause of action is a claim for loss of consortium.  The final cause of action seeks wage loss damages in reference to the first four causes of action.

CIVIL 03-1189 (PG)                    2

summary judgment on all causes of actions except the fifth one earlier today.  A recommendation was not made on the fifth cause of action, a COBRA claim, because plaintiff filed a cross motion for partial summary judgment regarding the COBRA claim on July 27, 2005.  (Docket No. 96.) Thus, this recommendation applies to the COBRA cause of action.

Having considered the arguments of the parties, the evidence in the record, and the applicable law, it is my recommendation that plaintiff's cross motion for partial summary judgment be DENIED, and defendant's motion for summary judgment as to the COBRA claim be DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 25, 1999, plaintiff Betancourt was hired by defendant UAW in its Carolina, Puerto Rico office as a "call-in employee."[2]  Approximately six months later, on July 7, 1999, Betancourt's employment became classified as "Temporary, Full-Time Clerk-Typist."[3]  Plaintiff alleges that the sexual harassment on which her

---

[2]Article 2, section 2, of the terms and conditions of Betancourt's employment defines "call-in employees" as employees who are hired for a short-term period not to exceed six months, such as for vacation, sick time, personal leave, etc.  Once a call-in employee has completed six months of employment within a 12-month period, their status will be changed to that of a temporary full-time employee.  During the first six months of employment, temporary call-in employees do not have Union representation, nor do they have any benefits under the Collective Bargaining Agreement.  The UAW does not rotate different call-in employees through a position or positions in order to avoid the transition from call-in to temporary full-time.

[3]Article 2, section 2, defines "temporary full-time employees" as employees who are (i) replacing another regular employee on leave or (ii) are hired because of circumstances that require temporary help for an indefinite period and shall be

CIVIL 03-1189 (PG)                          3

complaint is based began in May, 2000.  As a result, plaintiff filed an official administrative grievance.  On November 19, 2001, plaintiff met with UAW officials to discuss her internal complaint.  Three hours later, plaintiff Betancourt was discharged from her employment.  UAW claims that the discharge was due to "Reduction of the Temporary Organizing Staff."  Betancourt, on the hand, alleges that her lay-off was retaliation for the sexual harassment grievance she had filed.

Under COBRA, a qualified beneficiary of an employer's group health plan may obtain continued coverage under that plan, when he would have otherwise lost that benefit for certain reasons, such as the termination of employment. Geissal v. Moore Med. Corp., 524 U.S. 74, 76 (1998).  Pursuant to COBRA, on December 17, 2001, UAW sent Betancourt notice of the conditions under which she could continue her health insurance coverage.  That notice advised Betancourt that the premium was $1,161.47.  Betancourt refused payment because her previous premium had been $374.15.  This amount was based on La Cruz Azul's rates, La Cruz Azul being UAW's insurance carrier.  Betancourt argues that this is a violation of COBRA because 29 U.S.C. § 1162(3) strictly prohibits increasing premiums that exceed 102% of the employer's coverage cost.  UAW argues that it had changed its insurance

_____

entitled to the benefits of a permanent employee in accordance with their seniority. If the employee's status is changed from temporary full-time to permanent, the employee's seniority date will revert to her/his latest date of hire.  If a temporary full-time employee is laid-off, she/he will not be entitled to any contractual benefit while laid-off.  Temporary full-time employees may be considered for permanent positions that the UAW intends to fill within their region, sub-region, or the Detroit area, whichever applies.

CIVIL 03-1189 (PG)                    4

carrier to Blue Cross/Blue Shield of Michigan in December 2001, and that this new premium applied to all employees.  There is a factual dispute as to whether this switch to Blue Cross/Blue Shield was ever made.  UAW alleges that Betancourt's premium did not exceed 102% of the employer's coverage cost because this was the amount that all employees were now subject to.  Betancourt, on the other hand, argues that UAW never changed its insurance carrier.

Thus, the central issue is whether or not UAW switched its insurance carrier from La Cruz Azul to Blue Cross/Blue Shield.  Both parties move for summary judgment on the issue, claiming that there is no genuine controversy as to any material fact that would preclude the entry of judgment in their favor.

## II.  DISCUSSION

COBRA, specifically 29 U.S.C. 1161(a), provides in relevant part:

> The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

29 U.S.C. 1161(a).  This statute is subject to a variety of qualifications.  First, "'a qualifying event' includes a "'termination . . ., or reduction of hours, of the covered employee's employment' which, 'but for the continuation coverage under this part, would result in the loss of coverage of a qualified beneficiary.'"  Gaskell v. Harvard Co-op Soc., 3 F.3d 496, 496 (1st Cir. 1993) (quoting 29 U.S.C. 1163(2)).  Second, "the plan may require payment of a premium for any period of continuation

CIVIL 03-1189 (PG)                    5

coverage, except that such premium . . . shall not exceed 102 percent of the applicable premium for such period . . . ." 29 U.S.C. 1162(3). "[A]pplicable premium" means, with respect to any period of continuation coverage of qualified beneficiaries, the cost to the plan for such period of the coverage for similarly situated beneficiaries with respect to whom a qualifying event has not occurred (without regard to whether such cost is paid by the employer or employee)." 29 U.S.C. § 1164(1).

The plan administrator must also provide notice of COBRA rights to covered employees at the time of commencement of coverage under the plan, and when the qualifying event occurs. 29 U.S.C. § 1166(a)(1), (a)(4); Rodríguez v. Int'l College fo Bus. & Tech., Inc., 364 F. Supp. 2d 40, 44 (D.P.R. 2005); Torres-Negrón v. Ramallo Bros. Printing, Inc., 203 F. Supp. 2d 120, 124 (D.P.R. 2002). A plan administrator must notify a discharged employee of his COBRA rights within 14 days of his termination, and must allow him at least 60 days to decide whether to elect to continue coverage under the employer's health plan. 29 U.S.C. § 1166(a)(4), § 1166(c). One may elect to continue coverage for up to 18 months following discharge. 29 U.S.C. § 1162(2)(A)(i); see Morales-Cotte v. Cooperativa de Ahorro y Crédito, 73 F. Supp. 2d 153, 155 (D.P.R. 1999).

Thus, a seminal issue is whether or not UAW switched its insurance carrier from La Cruz Azul to Blue Cross/Blue Shield. If it did not, then UAW violated 29 U.S.C. § 1162(3) when it conditioned Betancourt's continued coverage on the

CIVIL 03-1189 (PG)                          6

$1,161,47 premium that exceeded the 102% maximum increase set forth in the statute.  If UAW did change insurance carriers, then UAW would not have violated COBRA if "similarly situated beneficiaries with respect to whom a qualifying event ha[d] not occurred" were also subject to the new premium.  See 29 U.S.C. § 1164(1).

### 1.  Plaintiff's Cross Motion for Summary Judgment

Plaintiff Betancourt argues that UAW conditioned her continued coverage on a premium that represented a 310 percent increase of th employer's cost–a direct violation of 29 U.S.C. § 1162(3), which set a statutory cap at 102 percent of the applicable premium.  Betancourt's argument, however, is misplaced.  She fails to realize that section 1164(1) defines "applicable premium" as the "cost to the plan for such period of the coverage for similarly situated beneficiaries with respect to whom a qualifying event has not occurred. . . ."  And here, UAW has complied with Local Rule 56 by referencing in its statement of facts that it switched its insurance carrier for their employees in Puerto Rico to Blue Cross/Blue Shield in December, 2001. Bill Bowers, insurance administrator for the UAW, testified that in December 2001, UAW switched from La Cruz Azul Insurance to Blue Cross/Blue Shield, and that the amount charged Betancourt did not exceed the actual premium charged by Blue Cross/Blue Shield.  Raquel Heywood, a clerical within the Carolina office, is the only testimony provided by Betancourt that supports her COBRA violation claim. Heywood testified that "[i]t . . .  [was] not true that . . . the UAW changed the medical Insurance carrier for their employees in Puerto Rico to Blue Cross/Blue

CIVIL 03-1189 (PG)                              7

Shield. . . ." (Docket No. 88, Ex.10, ¶ 24.)  Because COBRA requires that employees

offer qualified beneficiaries continuation coverage that "is identical to the coverage

provided under the plan to similarly situated beneficiaries under the plan with

respect to whom a qualifying event has not occurred[,]" the excessive premium UAW

charged Betancourt would be a direct violation of COBRA.  29 U.S.C. § 1162(1); see

Gaskell v. Harvard Co-op Soc., 3 F.3d at 498.  This assertion by one witness,

however, is insufficient for this court to grant summary judgment in the plaintiff's

favor.  Plaintiff provided no documentary evidence indicating that La Cruz Azul was

not the insurance carrier subsequent to plaintiff's termination.  And given UAW's

compliance with Local Rule 56, this court is precluded from granting summary

judgment in Betancourt's favor because genuine issues of material fact exist as to

whether UAW switched insurance carriers.

     2.  Defendant's Motion for Summary Judgment

     Likewise, UAW has failed to provide sufficient evidence that it did switch

carriers.  UAW relies solely on testimonial evidence from Bowers.  Though Bowers

testified that UAW switched all of its Puerto Rico employees to Blue Cross/Blue Shield

in December, 2001, UAW provided no documentary evidence that such a switch was

ever made.  Betancourt complied with Local Rule 56 by referencing in her statement

of contested facts the testimony of Heywood.  Heywood testified that no such switch

was ever made.  (Docket No. 88, Ex. 10, ¶ 24.)  At a minimum, genuine issues of

material fact exist as to whether UAW switched insurance carriers.

CIVIL 03-1189 (PG)                    8

UAW has not provided sufficient evidence that it did switch its insurance carrier to Blue Cross/Blue Shield, nor has Betancourt provided sufficient evidence that UAW it did not switch insurance carriers.  And because each party has complied with Local Rule 56 by referencing controverting testimony in their respective statement of contested/uncontested facts, this court is precluded from granting summary judgment in either party's favor.

### III.  CONCLUSION

In view of the above, it is my recommendation that UAW's motion for summary judgment be DENIED and Betancourt's cross motion for summary judgment be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v.

CIVIL 03-1189 (PG)                              9


<u>Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>,

616 F.2d 603 (1st Cir. 1980).

　　　At San Juan, Puerto Rico, this 11th day of October, 2005.


                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge